Our final matter, I believe. In re. COMMERCIAL SERVICES BUILDING, INC., Councilor Polis, appearing to report, Sean A. O'Keefe, appearing for appellee. Mr. Polis, do you wish to reserve some time? I guess five minutes. All right. You may proceed if you're ready to... Good morning, Your Honors. May it please the Court, my name is Tom Polis, and I practice in Irvine, California, and I represent the appellant on all the three matters before Your Honors on this matter. The Baskin group, and the three consolidated, or they're not consolidated, but the three related appeals kind of tell the story of the initial disallowance of my client's claim for approximately $2 million. The motion for reconsideration, which is a second appeal, I believe it's 1280 is the number on the Court's docket. That's our motion for reconsideration, which was quickly filed after the Court, Judge Eric Smith, disallowed the claim. And then finally, the third appeal that's before Your Honors is 1281, which is the motion in limine, which we opposed, but notwithstanding that, the Court nonetheless granted that. I mean, to tell the story as it's told in the briefs and the whole sort of ball of wax, is my client, the Baskin group, made a loan for $2.1 million to the debtor. Not the best documented loan, not the kind of loan I would document, or not the loan I would, the way it was documented, or lack thereof, but nonetheless it was made a loan. Let's start there, because this is where Judge Smith started, and it seems to be the appropriate place to start here with the same question is, what are the terms of that loan? That was essentially the first question out of her mouth, first statement out of her mouth. And while you're right, the record is fairly convoluted from there, it always comes back to that comment. You know, where's the assent? I understand your point, which is you copied somebody with the debtor. Judge Smith said, where's the assent? She didn't find it. She didn't find any interest, and she didn't find any term. So why is her decision fundamentally on the claim, which kind of blows through the other two, why is that error when looking at the record, I still can't find any assent from the entity to be charged with the loan, because that's a question of fact. And the interest and the term. Well, Your Honor, as far as the assent, the argument we made at the lower court, and we talked about it in our opening brief, is, again, it's not as clear as it should otherwise have been, but notwithstanding that, there's this e-mail exchange. There's not an exchange. That was the whole problem with Judge Smith. There was no exchange. You copied. There was no affirmative assent. You are extrapolating, and I haven't seen the citation, that silence in this regard is tantamount to assent to enter into a loan. And that seems to be a major hole in your argument. Well, Your Honor, the assent is the following. Yes, you're right. There wasn't something, an e-mail, confirming e-mail back from the debtor. There was never an e-mail from the debtor to you in your chain, which is a couple of e-mails. But, I mean, that seems to be what troubled her from the beginning, is that you said, you know, look, we're going to call this a loan. They come back and say, no, you were just funding obligations that you were ultimately liable for. And the difference is in there, but there's nothing to bridge that divide to say you agreed to take this as a loan. Well, we cited Section 1624 of the Civil Code that says that if an e-mail is sent, such as the e-mails that we had in our motion and our objection, I guess, our response to the claim of objection, and which we included with this appeal, what is it, Civil Code 1624, the California Civil Code, says that the kind of e-mail we sent, and I know it's an e-mail to a banker that says, okay, wire $2.1 million to the Bascom Group. And you say that e-mail was copied on just someone. And they tried to make the argument that the someone was somebody who changed, you know, emptied the trash cans or something. It wasn't that someone. The someone, Dwayne Thompson, as we put in our declaration, was the director of finance. Well, that's a. It's a disputed issue. But also, there is no indication how. You did not establish how you knew that. Right? Actually, you said controller and chief financial officer, I believe, is the phrase that's repeated in your briefing. And they dispute that he was an officer at all, that he had any contracting authority. That's all. We're still missing the point. Where is the actual assent? You sent the e-mails. The evidentiary status of the e-mails isn't that question. It's what came back to them to say, yes, we accept this. Well, and that's sort of, and again, I don't know if we're going to put these in three separate buckets, three separate appeals, but that sort of rolls into the second bucket where the assent, which they don't want to talk about, and that was part of their motion in Lemony, the debtor's own books and records says loan payable. That wasn't before Judge Smith at the claims objection hearing. And that's what we raised in the motion for reconsideration. We're getting back. You're getting ahead of the game, I understand. You want to get there. But her point was before her. Why was that decision wrong? You can say, you can argue, and I'll give you time to argue that you should have been given us time to go back and bring the documents that we failed to give to the objecting party and to the court, but it's clear at the time of that first hearing those documents were not there. That information was not provided. The matter had been continued. You had gotten extension on your request for production. So let's look at that time. Where is the assent given to Judge Smith at that first hearing? Again, our position is the declaration of David Kim saying that they asked for a loan for $2.1 million, that the appellee, Douglas Patrick, was the president of the corporation at that time, held 95% of the stock, that he had asked. It doesn't say him. It says they. It says the corporation. Yeah. Okay. And who? I mean, it says they and then Mr. Thompson, who you purport was the CFO controller. And, of course, they're going to say he wasn't. Okay? And we said in the motion for reconsideration, and, again, I'm trying to keep the bucket separate, and I understand what Your Honor is saying, you know, keep the bucket separate, but there's such a, the fact that the initial motion for the claim objection came on a, I'm not going to say it's a relatively short timeframe, but we did lay out that I was out of contact, so to speak, for a month or so. They did give us a continuance. At the time that we had to file our opposition, we had what we had. It wasn't really your opposition, too, because you filed your fourth proof of claim that same date. Correct. You kind of changed the goalposts, too. It was always the $2.1 million. Well, it went from essentially an account stated to a loan supported by four brief e-mails. So, again, back to Your Honor's question, we go back to what we initially said, which I don't know why, well, first of all, the fact that it was basically dueling declarations. My client's declaration, David Kim, which was basically disregarded by Judge Smith, with all due respect to Judge Smith, yet the only evidence they had was their declaration of David, or excuse me, of Douglas Patrick that said there was no loan. Okay, so we have dueling declarations. And keep in mind, we tried to raise this at the hearing on the claim objection on whatever, that was July 10th, that let's keep in mind also that Mr. Patrick had already, we raised a credibility issue. She says, I don't want to hear that right now. And it's like, wait a minute, we had a $5.4 million judgment against Mr. Her point, I believe, at that was. He could be credible for one reason, but credible, not credible for another. She did say that, but she also said, where's the interest, where's the term? Because you can look through this. You have imposed interest, but we don't see any interest in there. More importantly, and she indicated, is this a 5-year, 6-month, is it payable on demand? What is this term? There is nothing in there that suggests the term for repayment, which would seem to be fairly important in a loan. And we did put this in the motion or in the objection or response to the claim objection in the motion for reconsideration. These folks, the debtor, commercial services and my client, the Baskin Group, the Baskin Group accounted for probably 95% of the business that the debtor did. So there was a lot of back and forth between these folks. And this happened in 2008. We all know what happened to the real estate market in 2008. And so they came to, they, somebody, our position is that Douglas Patrick and David Philbeck, the President and Vice President, came to Mr. Kim with the Baskin Group and said, we need this money. We need a loan. And so you're asking, you know, good questions. What was the term? At that point, it was basically, we're going to run out of payroll. We're at our death's door, so to speak. We need this loan. As far as additional terms, the interest, the default rate, the maturity date, that was something that they didn't talk about because of this relationship between the parties. So to say that, yeah, was this a loan that any of us in this room would have documented the way it was undocumented, so to speak, no, but it was still a loan. And his declaration said it was a loan. The only contrary evidence is of Patrick, which is obviously going to be the contrary. No, it wasn't a loan. Yet when we get to the motion for reconsideration where we have it booked in the debtor's books and records as a note payable and we have the Director of Finance, Dwayne Thompson, saying it was intended to be a loan, but we never get our day in court on that. That was just completely shut down. And as far as the factors under, what is it, 502J of the Bankruptcy Code, which allows the court to allow or to reconsider a disallowed or an allowed claim, and also Rule 3008 of the Federal Rules of Bankruptcy Procedure, which does the same thing. And that code section and that Rule 3008 are in there. We believe, and I think the cases say, for this exact situation. This happened on a rather quick track to have a claim that was filed initially. When was that? October of 2009, I think, when the involuntary was filed. And then another proof of claim was filed a month or two after that. And to have this claim sit there on the record, on the books, so to speak, or on the docket of the case for nine years, and then on this short track, let's object to this claim. I'm on vacation. The principals at Bascom Group, they're out, that have any knowledge of this loan from nine years earlier. And then we basically get shut out. We believe that. You have about four minutes. Yes. Thank you. We believe that the factors under 5002J, along with 3008, the expediency in which we did this. And most importantly, the thing, the word that they don't want to hear ever, is we believe that the testimony that the appellee, Douglas Patrick, provided was perjured testimony. He says there's no loan. The debtor's books and records say they're a loan. Okay, that's a problem. He says the money, the 2.1, was put into a Bascom account. We provided the court. I believe he said it was Bascom controlled. Okay. It was stolen. That's an awfully clear, far jump to perjury. Yeah. And you are over. If you want to reserve, you're more than welcome to continue. I'll wait just for my three minutes or whatever. Thank you. Thank you. All right. Counsel. Sean O'Keefe, appearing on behalf of Douglas Patrick. May it please the Court. Much of what you have heard today was not in the record. And it's exactly what Mr. Polo has endeavored to do before Judge Smith. And this is not a case where he wasn't afforded sufficient time. I afforded him that time. He asked me for an extension. I granted him an extension. He never asked for another extension, which is what Judge Smith noted on the record. Now, the standard here is an abuse of discretion. So the question is, was the court's ruling illogical, implausible, or without support in the record? This is what the record stated. There was no evidence establishing the existence of a loan. Oh, no. Come on. We do have a statement on a declaration that says that a loan was requested. And, you know, my company loaned. Mr. Kim does say they loaned him. He does, Your Honor. But what he does, and he's very careful in parsing his words, what he says is a loan was made to CSBI. Thereafter, he directs the court to the emails. And everything is a full stop. That's the totality of his declaration, other than he purports to characterize what's in those writings. Now, if you look at the penultimate email, all that's happening is one Bascom employee is directing their accountant to book an entry. That's it. But it still doesn't overcome the statement that on June 6, 2008, the request of Commercial Services Building, Inc., Bascom loaned $2.1 million to CSBI. You're absolutely right. That standing alone is the totality of their evidence. Do you agree that Judge Smith denied or sustained your objection based upon lack of the essential elements of a contract sufficient to establish a formation of a loan? Absolutely. That was a complete failure of proof. The defect wasn't just that. And this is the record at the point in time. My client testified, we are in the business of performing renovation services. We get paid a fee for our services. He explained that they had worked for them on 60 projects, on time, on budget. He also explained the relationship that they performed the services for the lower-level LLCs, which were managed by Bascom. My client, as a service provider, would never borrow money to perform services on their projects. That simply would never happen. And that was one of the 800-pound gorilla in the room. Why? Why would my client borrow $2 million to fix your projects? Why would they ever do that? Well, they're saying because you needed to make payroll. Your Honor, that wasn't in the record. And, in fact, that's why Mr. Patrick testified there was no loan. There was absolutely no loan. And that's why he put in there there were 60 projects that they did on time, on budget. These people didn't make a mistake. He also explained in there that the reason why this arose, and all of this is my client's testimony, is their lenders failed to fund. One of their lenders was Lehman Brothers. So when they failed to fund, there was a deficit. All of these people who were performing services on the contract, including my client. That information was not in the record, to be fair, either, correct? There was, in his first and second declaration, a reference that their lenders were not funding. So they had a choice, allow their properties to be foreclosed on or to advance through a lockbox money to pay the debts of their entities. My clients would never have borrowed money to fix their entities. Everything else in this case is just Mr. Polis testifying. And I would also note that in this entire litigation, my client has been forced to fight on one leg with an arm tied behind his back. I sent out a request for production of documents immediately after I objected in May. The hearing was in July. They refused to produce anything, nothing. Under Rule 37, Judge Smith could have stricken their pleading and entered all the findings for my client. This court has the right to affirm on any basis. Had they produced those records, they would have shown what the inferences clearly indicate, which is they booked the receivable to the account because at that point in time they didn't know what each LLC would draw. And their tax returns would also show that they didn't book a $2 million loan to my client and then write it off. It was booked to each one of those LLCs. So your client was a clearinghouse, basically. My client was just a manager. They just performed services and they had subcontractors. But it was always their LLCs and they were the managing member. So this situation developed because they couldn't pay. It was 2008. The world was coming down and they couldn't pay. So they opened up an account, wrote a check out of their pocket, and my client was just a disbursement agent. But this case comes down to the evidence. And the evidence is an entry in an e-mail from one employee to another that says, book it to Commercial Services Building Inc. Lockbox. They took money from one of their accounts and moved it to another account. And then they simply said, book it for our internal recordkeeping purposes as a receivable. There was no loan. On the assent issue, you can't say to someone, in this case, there was no request for assent. There was no request for a loan. Why was Mr. Thompson on the e-mails? Your Honor, we were going to serve and did serve as the disbursing agent with basically what they would do is they loan the money.  They would look at them and say, pay these from the lockbox account. We would then pay those subcontractors who were doing work on their projects. That was all his role was simply a screvener on the account. He had no power to approve a loan. There was only two officers in this company, Mr. Philbeck and Mr. Patrick. Neither approved the loan. They also, there was no loan requested. Mr. Kim states, CSBI requested a loan. That's hearsay. I move to strike that in my evidentiary objections. He doesn't say who requested it. He doesn't say why they requested it. He doesn't say what for. He's very careful in saying they requested a loan. Full stop. Now look at these e-mails. The reason why is because he wasn't telling the truth and it was patently incredible. So what Judge Smith was faced with was, okay, you have two sophisticated parties. You're making a $2 million loan. You don't ask for a cent. You don't set out the terms. You don't have any writing whatsoever. Nothing. Nothing at all. You won't produce your accounting records. You won't produce your tax returns. You won't produce anything. So they came to court and said, here's how this hearing is going to happen. We're going to give four e-mails, those we designated. And I asked for their ESI and my RFP. They didn't produce anything. They came to the hearing and, Judge Smith, this is a patently incredible showing for what you're seeking. Judge Smith gave them every latitude in letting their evidence into court. Remember, if someone refuses to produce and comes to trial, typically you strike their answer. You strike their evidence. And all of my evidence is admitted. My findings are deemed admitted. Judge Smith didn't do that. That was within the realm of her rights under 37C, which adopts 37B remedies. But she didn't do that. She listened to them. But this court can say, no, she had the power to strike all of your evidence at that point in time. It was incredible evidence. Under the abuse of discretion standard, we're going to affirm this ruling. I would simply close by saying, had they produced, had they done and given me the opportunity to try the entirety of the case, which is all I wanted to do, we wouldn't have had this circumstance. But this is a billion-dollar outfit represented by a competent lawyer who refused to produce anything. I had an extensive meet and confer with Mr. Polis, and he said, I'm producing nothing. Why? Because it's irrelevant. Yet 10 days after the hearing, 500 pages of documents show up, which magically are relevant. And once again, he gets to select just those documents in his record that he intends to present to the court. So in both hearings, I have to fight on one leg with one arm behind my back against a massive entity on behalf of an individual. The system doesn't work that way. If there's ever a case where the court would say, no, you made your bed, now you're going to lie in it, it's this one. Does the court have any questions? All set. Thank you very much. Thank you. Mr. Polis, you've got a bit of time left. Thank you. Your Honors, as far as the production of documents, at the time that this was, I believe, in mid-June, after having come back from a month vacation, at the time we were asked for the documents, we had what we had. We didn't have much. Again, I was out of the loop, and we explained that in our motion for reconsideration. But to borrow a line from Judge Lafferty, that's a you problem. I mean, why does that matter? You were under an obligation, your client was under an obligation to produce these documents. It was given leave for additional time, and it just didn't do it. And that's the whole purpose of Rule 37. If they believed we were stonewalling, sandbagging, whatever words you want to use, they could file a motion. We don't even get to the Rule 37 to the motion in limine if what Judge Smith did, based upon the record before her at that time, was correct. That's all we had at the time. Those four emails, that's all we had at the time. That's all you had. That's all I had. That's all that when I asked the client. What do we have? But again, so maybe it's not a you problem, it's your client's problem. It's an us problem. Let's put it that way. Yeah. But it doesn't – I mean, we don't even have to get to the limine additional documents, because why wasn't Judge Smith entitled to rule based upon what she had before her? And that's my point, Your Honor, when we said that she ruled just on basically dueling declarations. My guy says there's a loan. They say there's no loan. Okay? But she was saying, and I'll shut up after this because I'm monopolizing, but your guy says there's a loan, but there are no terms as to when, how it's going to get paid, and to a lesser extent, interest, and to a big extent, a cent. Because you're saying this is a loan based upon these e-mails that we copied somebody in that company. You say that's the controller. That's disputed. But there's nothing from that person or that entity coming back and says, we agree. Well, 1624 of the Civil Code doesn't say that they have to send a, oh, yes, Mother May, yes, we agree with that. That's as to admissibility. That's as to admissibility in effect, not as to what that means. All right? You can't gin up the assent. I mean, if there was, if you had copied, if you had put that on a letter and CC'd it or faxed it to them, it still wouldn't have any additional force or effect. It doesn't create the assent just by sending it over there. 1624 does create the assent when they don't object with it. I think it's three to five business days. There was no objection from somebody from BASC or from the debtor. Commercial Services said, oh, no, no, no, that e-mail from July 7th, we don't, that wasn't a loan. Don't book that as a loan. Book that as something else. Nothing was said. And as far as the someone, again, you know, Dwayne, what is it, Dwayne Thompson, who CC'd on all those e-mails, it says, book this as a loan payable from, or loan receivable from the debtor, you know, et cetera, et cetera. Milton Daly, the accountant, put this as a loan receivable to BASC, loan payable from the debtor. At no time did they say during that time period, oh, no, no, you mischaracterized that. That's not supposed to be a loan. So the assent is they're not objection, and that's consistent with 1624, Your Honor, the Civil Code. All right. Something's flashing here. I guess I'm ‑‑ Your time is up. Okay. My time is up. Thank you. Thank you, Your Honor. Thank you. This will be under submission. Thank you for your good arguments. And we are in recess. All rise.
judges: Taylor, Lafferty, Spraker